F. L. NUGENT et al., Appellants,

v.

G. M. FREEMAN et al., Appellees.

No. 3343.

Court of Civil Appeals of Texas.

Eastland.

Sept. 20, 1957.

Rehearing Denied Oct. 25, 1957.

Ramey, Calhoun, Brelsford, Hull & Flock, Tyler, Shank, Dedman & Payne, Dallas, George W. Outlaw, Mays & Leonard, Sweetwater, for appellants.

Beall, Nunn & Griggs, Sweetwater, Scarborough, Yates, Scarborough & Black, Abilene, for appellees.

LONG, Justice.

On the 15th day of March, 1946, F. L. Nugent and G. M. Nugent by warranty deed conveyed to G. M. Freeman thirty acres of land in Nolan County, Texas. The deed contained the following reservation:

"Out of the Above Described property there is reserved by the said G. M. Nugent and F. L. Nugent an undivided one-half interest in and to the royalty rights (that is one-sixteenth) of all the oil, gas and other minerals that may be produced from the above described land. It is expressly understood and agreed that this reservation does not reserve any interest into the said Grantors which would require them or their heirs or assigns to join in the execution of any future oil, gas or mineral lease that may be given upon

said property, but that the right to make, execute and deliver such oil, gas and mineral leases shall exist solely in Grantee, his heirs or assigns. No lease which may be given in the future by Grantee, his heirs or assigns shall ever abridge the right of Grantors, their heirs or assigns to receive the one-sixteenth (⅟₁₆th) interest herein reserved."

At that time G. M. Freeman owned a 120 acre tract of land adjoining the thirty acres conveyed to him by the Nugents. Thereafter, on the ninth day of June, 1951, Freeman and wife executed and delivered to George Parker an oil and gas lease conveying the entire 150 acre tract of land. The lease covered both the 120 acre tract and the thirty acre tract under one description. Thereafter this lease was assigned to Payne, Johnston and Byars, who are parties to this suit. The lessees drilled three wells on the 150 acre tract. There was no well drilled on the thirty acres of land conveyed by the Nugents to Freeman. All of the production came from the 120 acres owned by Freeman at the time of the execution of the deed by the Nugents to him conveying the thirty acres. The first well was completed on April 9, 1953, the second on May 15, 1953, and the third on February 16, 1954. It was stipulated that the Nugents had actual knowledge not later than the month of August, 1953, that oil was being produced from the wells on the 120 acre tract. Freeman and those claiming under him collected all the royalty from the oil produced from the land. The Nugents never signed a lease on the land and, in so far as the record shows, they were never requested to sign a lease on the property and never offered to sign such a lease. They never signed any written ratification of the lease and never executed any instrument pertaining to the lease or the pooling of the two tracts of land involved. There was nothing in the lease to indicate that the Nugents were to get less than their ⅟₁₆th of the oil produced from the 30 acres or that they were to get any royalty from the 120 acre tract. On the 12th day of December, 1955, the Nugents instituted this suit against Freeman and his wife and those claiming royalty interest in the land under them and the owners of the lease on the land.

The Nugents alleged that when Freeman and his wife executed one lease covering the entire 150 acre tract of land this had the effect of pooling the thirty acre tract conveyed by them to Freeman with the 120 acre tract owned by Freeman at the time of the execution of the deed. They alleged that by virtue of such pooling arrangement they are entitled to recover their proportionate part of the oil produced from the three wells on the 120 acre tract. They asked for a judgment for this royalty. They also, in the alternative, prayed for cancellation of the lease in so far as it pertained to the thirty acre tract. The court, on motion of the Nugents, severed the issues and tried only the issue as to whether the Nugents were entitled to share in the production from the three wells on the 120 acre tract. The case was tried before the court without a jury upon an agreed statement of facts. The court entered judgment that the Nugents take nothing. The Nugents and the lease owners have appealed.

The facts were undisputed. The trial court filed the following conclusions of law:

"The only matter which was before the Court, and the only matter decided by the Court in this case was whether or not the royalty interest of the plaintiffs in the thirty-acre tract of land was pooled with the royalty interest of the Freeman Defendants in the entire 150 acre tract of land involved herein, so as to entitled the plaintiffs to share on a prorata acreage basis in the oil produced by lessee defendants from the entire 150 acre tract of land involved herein; all other issues, alternative pleas and grounds for recovery or causes of action, if any, were severed from this suit, were re-

served for adjudication in another suit, and were not passed on here. The Court desires to make this clear to any appellate Court which might consider this case.

"Accordingly, in response to the request of plaintiffs in this cause, I make and file the following as my conclusions of law herein:

"I conclude as a matter of law that G. M. Freeman and wife were fully vested with the right and authority to execute and deliver the oil and gas lease shown by the agreed Statement of Facts in this case, recorded in Volume 19, page 71 of the Oil & Gas Lease Records of Nolan County Texas, which includes the thirty acre tract involved with other lands constituting the 150 acres, the entire lease. But I conclude as a matter of law that such authority does not include the authority to pool the plaintiffs' mineral interest with the mineral interests in the entire 150 acre tract of land. The execution of such lease within itself did not pool the mineral interest of the plaintiffs in the thirty acre tract of land with the other lands covered by the lease.

"There is nothing in the record, as disclosed by the agreed statement of facts herein, that would in any manner effect a pooling of the royalty interest of the plaintiffs herein with the mineral interests under the entire 150 acre tract, and therefore the plaintiffs cannot recover on the basis that their mineral interest has been pooled with the mineral interests being produced by the lessee defendants from the entire 150 acre tract, which lease is still in full force and effect and owned by the lessee defendants."

■■ We hold that the trial court correctly applied the law to the facts and his conclusions of law are hereby approved. Freeman had no authority to pool the royalty interest in the thirty acre tract with the mineral interest of Freeman in the 120 acre tract without the consent of the Nugents. In fact under the terms of the reservation in the deed from Nugent to Freeman he was specifically instructed not to execute a lease on the thirty acres which would not yield to Nugents' 1/16th of the oil produced from said thirty acre tract. Brown v. Smith, 141 Tex. 425, 174 S.W.2d 43. If Freeman had no power to pool the interest of the Nugents in the royalty under the thirty acre tract with the minerals in the 120 acre tract, then the question arises, when, and in what manner, was the pooling effected. Appellants say that by the filing of this suit the Nugents ratified the unauthorized act of Freeman in attempting to pool the mineral interest in the two tracts. We cannot agree with this position. It is shown from the record that in August, 1953, the Nugents knew there was production on the 120 acre tract. The wells produced for more than two years and the Freemans were paid all of the royalty from such production. The Nugents waited until December, 1955, before they filed this suit, three years and three months after oil was known by them to be produced on the 120 acre tract. All of the royalty therefrom was during all that time paid to the owners of the 120 acres. At the time the suit was filed it is undisputed that the lease had been completely developed. We have no doubt that if production had been obtained on the thirty acre tract the Nugents could have collected their full 1/16th royalty. They held this position for more than two years without attempting in any way to ratify the attempted pooling of the mineral interests by Freeman. They never did anything in the way of ratifying the pooling arrangement until long after the lease had been completely developed.

■■ Appellants, Nugents, contend that the Freemans are estopped to assert title to all of the royalty from the three wells because the thirty acre tract was used in increasing the allowable of the wells on the 120 acre tract. We do not agree with this

contention. It is undisputed that Freeman had nothing to do with obtaining the allowable from the Railroad Commission. This was handled exclusively by the owners of the lease. It is undisputed that Freeman had nothing to do with the way and manner in which the lease was developed. The appellant lessees made the location for the wells and made the application to the Railroad Commission for the allowable. Furthermore, it is the settled law of this state that the rules and regulations of a Railroad Commission respecting the development of an oil field cannot affect the property rights of the owners of the land or the parties holding the lease thereon. Mueller v. Sutherland, Tex.Civ.App., 179 S.W.2d 801. We hold that a pooling or unitization cannot be brought about by an order of the Railroad Commission.

Freeman never made an offer to the Nugents to pool the lease but if it should be held that by the execution of the lease which covered the entire 150 acres there was an offer by Freeman to pool the two tracts there is no showing that the Nugents ever accepted said offer. As has heretofore been stated, the filing of this suit after the lease had been fully developed is not a sufficient acceptance to meet the requirements of the law.

The appellant lessees contend that if the court does not hold a pooling arrangement was effected that it will work an undue hardship on them; that they will be required to erect separate storage tanks on the thirty acre tract in order to keep the Nugents' royalties separate from the other royalty owners. This argument carries no weight. Appellant lessees knew at the time they obtained the lease on the land that Freeman had no power to pool the thirty acre tract with the 120 acre tract without the consent of the Nugents, so that it could affect the right of the Nugents to get 1⁄16th of the oil produced from the 30 acres. They also knew that he was instructed by the terms of the reservation not to make such an arrangement. If appellant lessees desired to have the lease unitized they should have obtained the written ratification of the Nugents.

We have considered all points raised by all appellants and have concluded that there is no merit in any of them and they are accordingly overruled. The trial court entered the only judgment that could have been entered under the undisputed facts. The judgment is affirmed.