**Virgil MATHEWS et al., Appellants,**

**v.**

**SUN OIL COMPANY et al., Appellees.**

**No. 7669.**

Court of Civil Appeals of Texas.

Amarillo.

Dec. 27, 1966.

Rehearing Denied Jan. 30, 1967.

Sanders, Scott, Saunders, Brian & Humphrey, Amarillo, C. J. Humphrey, Amarillo, of counsel, for appellants.

Underwood, Wilson, Sutton, Heare & Berry, Amarillo, Lynn Adams, Oklahoma City, Okl., C. F. Heidrick, E. M. Cage and J. C. Peurifoy, Jackson, Walker, Winstead, Cantwell & Miller, Dallas, A. W. Walker, Jr., Jack Pew, Jr., Dallas, and H. A. Berry, Amarillo, of counsel, for appellees.

DENTON, Chief Justice.

Suit was instituted by appellants, Virgil Mathews and wife, J. W. Sanders, Zula Scott, E. T. Scott, Jr., and John William Scott, Trustees of the E. T. Scott Trust and Howard F. Saunders, Trustee of the Willie Belle Sanders Trust against Sun Oil Company and Kerr-McGee Oil Industries, Inc., seeking a judgment declaring that a certain oil and gas lease executed by Virgil Mathews and wife be terminated as to one section of land therein described. All parties filed motions for summary judgment. The trial court granted the defendants' motion and held the lease in question is effective and had not terminated.

All material facts were stipulated by the parties or agreed upon by uncontroverted affidavits and exhibits filed with the motions for summary judgment. Prior to November 9, 1949 appellants Virgil Mathews and wife owned the surface and entire mineral fee title to all of Section 13 DL&C Co. Survey containing 244 acres more or less and all of Section 4, Block M–22, T.C. Ry. Co. Survey containing 542 acres more or less, both in Hutchinson County, Texas. Mathews and his wife owned the full executive right to lease both sections which were contiguous tracts. On November 9, 1949 Mathews and his wife executed an oil and gas lease to Kerr-McGee covering both sections 13 and 4 for a primary term of eight years. On March 8, 1957 Mathews and wife, who owned the same mineral interest and leasing rights referred to, executed a second oil and gas lease to Kerr-McGee covering the same two sections of land. Lessors received a cash bonus of $15,720.00 and reserved the usual ⅛ royalty. This lease was for a primary term of five years and was to commence on November 9, 1957, the expiration date of the 1949 lease. At the time the 1957 lease was executed there was an outstanding ⅟₁₆ non-participating royalty interest in both sections 13 and 4. The ⅟₁₆ non-participating royalty interest in all of Section 4 was owned by J. W. Sanders, the E. T. Scott Trust and the Willie Belle Sanders Trust, who were the plaintiffs below along with Virgil Mathews and his wife. The owners of the ⅟₁₆ non-participating royalty interest in Section 13 was owned by others who are not parties to this suit, and none of the non-participating royalty owners in this suit had an interest in Section 13. There was no pooling clause in the 1957 lease. All rentals were paid in the manner provided for in the lease. On November 7, 1962, two days prior to the termination of the primary term, Sun Oil Company, pursuant to an

agreement with Kerr-McGee, the Lessee, commenced the drilling of a well for oil and gas on Section 13. The drilling continued until such well was completed on February 6, 1963 as a dual gas well capable of producing gas with condensate and was placed on actual production on June 28, 1963. No well has been drilled on Section 4.

Appellants, both the lessors and the royalty owners, take the position that the one lease on the two tracts of land has the effect of pooling the royalties of the non-participating owners in Section 13 with the royalties of the non-participating owners in Section 4; and that such action was not authorized in the absence of a pooling clause in the lease. They urge that the lease as to Section 4 expired at the end of the primary term in the absence of drilling or production on that section. They contend the legal effect of the lease was to create two separate and distinct oil and gas leases, one effective for Section 13 and one effective for Section 4. They concede the lessor possessed the right to execute leases that would bind the non-participating royalty interest, but contend one lease cannot bind the royalty interest in both sections. They do not contend the lease was invalid at the time of its execution.

■ It is settled in this state that, when an oil and gas lease covers land consisting of one or more tracts, paying production from one of such tracts will perpetuate the lease as to all the land described in the lease. Orive v. Sun Oil Company (Tex.Civ.App.) 346 S.W.2d 383 (Writ Ref.). That case involved a single lease which covered four described non-contiguous tracts of land. In holding paying production from one tract extended the lease beyond the primary term to the three other tracts described in the lease, the court said: "In the absence of anything in the lease to indicate a contrary intent, production on one tract perpetuated the lease as to all the land described." The lease here in question described both Sections 13 and 4 and provided for a primary

term of five years "and as long thereafter as oil, gas, or other mineral is produced from *the land hereinabove described."* (Emphasis added). Appellants have pointed to no language in the lease, nor have we found any, to indicate an intention of the parties not to perpetuate the lease on both tracts by paying production on one of the tracts. In fact, the specific language of the lease is contrary to such an intention. The lease was for the primary term of five years and as long as there was paying production "from the land hereinabove described" which included Section 4 together with Section 13. No other language in the lease contradicts or tends to modify this unambiguous language.

■ As we understand it, appellants also argue that in view of the rule that the holder of the executive right to lease has no authority to pool the royalty interests in Sections 13 and 4, the lease terminated at the end of the primary term as to Section 4 because of the absence of paying production in that section. We agree that it is a settled rule that the executive right to lease does not include the authority to pool the outstanding royalty interests. Gulf Oil Corporation v. Marathon Oil Company, 137 Tex. 59; 152 S.W.2d 711. Guaranty National Bank and Trust Co., etc. v. May (Tex.Civ.App.) 395 S.W.2d 80 (Ref. N.R.E.). Nugent v. Freeman (Tex. Civ.App.) 306 S.W.2d 167 (Ref. N.R.E.). However that rule gives no comfort to appellants' position. Those cases do not invalidate the lease as to the tract in which the royalty owner held his interest. They simply hold the holder of the leasing rights has no authority to pool outstanding royalty interests. The lessees here make no contention the lease resulted in a pooling of the royalty interest in the two sections. In further support of their position, appellants cite the well-known case of Brown v. Smith (Tex.Com.App.) 141 Tex. 425, 174 S.W.2d 43 (Opinion adopted). That case was brought by the lessors against the lessee for specific performance of a contract for an oil and gas lease on 62.75 acres of land.

564

There were two lessors, one owned 42.75 acres of land and one owned a 20 acre contiguous tract, who executed a single lease. Upon a title examination it was discovered there was an outstanding 1/32 non-participating royalty interest in the 20 acre tract owned by a third person who was not a party to the contract to lease. The court denied specific performance and held the lessees could not be required to accept the lease on the 62.75 acres because the lease contained a pooling clause and the lessors with the executive leasing rights could not require the non-participating royalty owner to pool her royalty interests in the 20 acre tract with the royalty rights owned by others in the other tract. The court's language "in many respects the burdens and obligations of petitioners under the lease tendered by respondents would be the same as they would be under two separate leases, one effecting the 20 acre tract and the other effecting the 42.75 acre tract" is pointed out by appellants to support their contention the lease under consideration should be treated as two separate leases. We do not agree. The court did not hold the lease would be invalid as to the 20 acre tract. That question was not before the court. We therefore conclude the lease in question is a single lease; that such lease does not pool the non-participating royalty interest in Section 4 with such interest in Section 13. It follows, in accordance with the language of the lease itself, that paying production in Section 13 extends the lease beyond the primary term for both sections described in such lease.

■ We further conclude, under the uncontroverted facts of this case, the appellants are estopped from seeking to convert the single lease on both Sections 13 and 4 into two separate leases on each of these sections. This same doctrine of estoppel by deed also precludes the contention that production on Section 13 does not continue the lease in force as to Section 4. Estoppel by contract or deed is the doctrine whereby a party is bound by the terms of his own contract or deed until it is set aside by

fraud, accident or mistake. United Fidelity Life Insurance Co. v. Fowler (Tex.Civ. App.) 38 S.W.2d 128 (Error Dis.) and Gress v. Gress (Tex.Civ.App.) 209 S.W.2d 1003 (Ref. N.R.E.). 22 Tex.Jur.2d Estoppel, Section 3. Estoppel by deed precludes parties to a valid sealed instrument and their privies to deny its force and effect by evidence of inferior solemnity. It denies to the grantor or those claiming under him the right to take a position inconsistent with the grant. Surtees v. Hobson, Tex. Civ.App., 4 S.W.2d 245. Affirmed Tex. Com.App., 13 S.W.2d 345. That doctrine is applicable under the uncontradicted facts of this case.

■ Virgil Mathews and his wife, fee simple owners of both the surface and minerals in both Sections 13 and 4 granted this "land", described both Sections 13 and 4 for a period of five years "and as long thereafter as oil, gas, or other mineral is produced from the land". A cash bonus was paid the lessors for the single lease on both sections of land. The same doctrine of estoppel by deed that precludes Mathews and his wife from denying the force and effect of the language of the single lease also applies to the other appellants as they are privy to the estate at the time the oil and gas lease was executed. At that time appellants J. W. Sanders, the Trustee of the E. T. Scott Trust and the Trustee of the Willie Belle Sanders Trust were owners of a 1/16 non-participating royalty interest in Section 4. On September 18, 1964, which was prior to the filing of this suit, Virgil Mathews and his wife executed an instrument designated "Quit Claim Deed" by which they conveyed to the other named appellants a 1/2 mineral fee interest in Section 4, non-participating only as to bonuses and delay rentals. They were thus in privity with the Mathews at all material times. We therefore conclude all appellants are estopped from seeking to convert the single oil and gas lease covering Sections 13 and 4 into two separate leases for each of these sections, and from claiming paying production on Section 13 does not continue the

lease in full force and effect as to Section 4.

The judgment of the trial court is affirmed.

CHAPMAN, J., not participating.